IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rachel Kleinmark,                      Case No. 3:07CV1512

         Plaintiff,

      v.                                      ORDER

CHS-Lake Erie, Inc.,

         Defendant.

This case is a dispute over defendant's alleged violation of the Family Medical Leave Act [FMLA], 29 U.S.C. § 2601 *et seq.*, and related state claims. Plaintiff, a former employee of St. Catherine's Fostoria [St. Catherine's], claims defendant violated FMLA's retaliation provision by terminating her employment because she availed herself of a protected right under the FMLA. She also asserts supplemental state law claims.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. Pending is defendant's motion for summary judgment as to all claims. [Doc. 26]. For the reasons that follow, the motion shall be granted.

**Background**

Rachel Kleinmark was employed by St. Catherine's, operated by defendant CHS-Lake Erie, Inc., from 2002 until August 21, 2006. St. Catherine's is a nursing facility specializing in the treatment of elderly patients.

On August 7, 2005, Kleinmark learned that her ten-month-old twins had drowned in the bathtub at home. Her husband was later convicted of involuntary manslaughter in connection with their deaths. The deaths and the criminal prosecution were widely publicized throughout the Tiffin area in which plaintiff lived.

St. Catherine's gave Kleinmark time off following the deaths of her children. Plaintiff returned to work on September 8, 2005. After her return, she engaged in discussions with staff and patients about matters related to the deaths of her children and the status of her husband's case. St. Catherine's formally requested that she cease these discussions while at work to prevent the patients from becoming upset.

Around 1:30pm on June 26, 2006, Heather Combs, Director of Nursing, observed Kleinmark with slurred speech and determined she was impaired and unable to work. At the time, Kleinmark was taking the drug Xanax for treatment of bi-polar disorder. That morning she had taken part of a dose to relieve chest pains, but it was more than her system could handle. Ultimately, she was driven home because she was unable to drive herself.

Following this incident, Kleinmark received a six-day suspension. This amounted to her being away from St. Catherine's for two weeks because she worked three twelve-hour shifts per week. On her return, Combs formally reported Kleinmark to the Ohio Board of Nursing for her conduct. Plaintiff refused to sign the report because she disputed accusations it contained.

On July 13, 2006, Kleinmark was admitted into a psychiatric hospital. A week after her admission, St. Catherine's received her FMLA leave forms which stated that she would return to work on August 8, 2006. St. Catherine's approved her request for FMLA leave. On August 4 and August 14, St. Catherine's received additional requests for leave, accompanied by doctors' excuses,

which attempted to extend plaintiff's leave until August 27. Prior to August 14, St. Catherine's notified Kleinmark that her approved weeks of FMLA leave would expire on August 17.

Kleinmark did not return to work on August 17. In a letter dated August 21, St. Catherine's terminated plaintiff because she had exhausted her FMLA leave and had not returned to work. It further encouraged her to reapply for a nursing position at St. Catherine's through the normal application process. Kleinmark received the letter on August 23.

Following Kleinmark's termination, Combs drafted a memo to nursing staff and placed it in a book behind the nurses' station. This memo informed employees that Kleinmark was no longer employed at St. Catherine's and should not call or enter the facility.

A week after her termination, Kleinmark returned to school; she did not reapply to St. Catherine's. On January 16, 2007, Kleinmark signed a consent decree acknowledging allegations set forth in Combs's report to the Ohio Board of Nursing. As a result, her license was reprimanded.

**Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must

set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) requires the nonmoving party to present some type of evidentiary material in support of its position. *Celotex*, *supra*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, *supra*, 477 U.S. at 322.

## Discussion

### 1. The Family Medical Leave Act

Congress enacted the FMLA to provide job security and help employees "balance the conflicting demands of work and personal life." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997); *see also* 29 U.S.C. § 2601(b). The Act entitles qualified employees working for covered employers to take temporary leave for medical reasons. 29 U.S.C. § 2612. The statute specifically allows up to twelve weeks leave during any twelve-month period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter" or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1).

The Sixth Circuit has recognized "two distinct theories for recovery" under the Act: 1) entitlement or interference  and 2) retaliation or discrimination. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *see also Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556-57 (6th Cir. 2006). In this case, plaintiff seeks recovery only under the retaliation theory.

## A. FMLA Retaliation Claim

Retaliation claims arise under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging or discriminating against employees who oppose unlawful FMLA practices. *See Hoge*, *supra*, 384 F.3d at 244. Absent direct evidence that an employee was discharged for taking FMLA-qualified leave, FMLA retaliation claims are subject to the familiar burden-shifting analysis set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See, e.g., Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003); *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309, 315 (6th Cir. 2001).

A plaintiff can establish a *prima facie* case of retaliation by showing that 1) she exercised rights available under the FMLA, 2) she suffered an adverse employment action, and 3) a causal connection between the two. *See Bryson v. Reigs Corp.*, 498 F.3d 561, 570 (6th Cir. 2007); *Chester v. Quadco Rehabilitation Center*, 484 F. Supp. 2d 735, 743 (N.D. Ohio 2007). The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If the employer does that, the plaintiff must prove, by a preponderance of the evidence, that the proffered reason is pretextual. *Bryson*, *supra*, 498 F.3d at 570; *Chester*, *supra*, 484 F. Supp. 2d at 743.

Plaintiff satisfies the first two prongs of her *prima facie* case: she 1) availed herself of her protected right to take FMLA leave and 2) subsequently suffered an adverse employment action when notified her "employment at St. Catherine's [had] ended." However, plaintiff has failed to sufficiently show a *prima facie* causal connection between her use of FMLA leave and her termination.

There is no dispute that Kleinmark's twelve weeks of FMLA leave expired on August 17, 2006. It is also undisputed that Kleinmark was given adequate notice by St. Catherine's and was aware that her FMLA leave would expire that day.

Because Kleinmark exhausted her FMLA leave and failed to return to work at the end of the approved period, she is not entitled to a remedy under 29 U.S.C. § 2615(a)(2). "This court has consequently held that an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506-07 (6th Cir. 2006); *see also* 29 C.F.R. 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.").

Plaintiff admits St. Catherine's notified her that her leave would expire. However, she asserts that she expected to have additional time to return to work beyond her the end of her FMLA leave. She further states that an administrator told her that St. Catherine's extended time off beyond the twelve-weeks of FMLA leave and allowed employees to continue their employment after exhausting FMLA leave. Regardless of Kleinmark's alleged understanding of how leave would be extended and

additional absences would be calculated, Kleinmark's approved FMLA leave expired days before St. Catherine's terminated her employment for failing to return to work when required to do so.

Moreover, if plaintiff was able to establish a *prima facie* case, she has not presented sufficient evidence that St. Catherine's stated reason for her termination was pretextual. A plaintiff establishes pretext by showing either: 1) the proffered reasons had no basis in fact; 2) the proffered reasons did not actually motivate the discharge; or 3) they were insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citation omitted). Kleinmark focuses her pretext argument on the third method. To succeed, she must show that her employer's proffered reason was false because other similarly situated employees did not suffer the same adverse employment action. *Id*.

Kleinmark believes that St. Catherine's granted similarly situated employees extensions beyond the twelve weeks of FMLA leave and did not fire others for exhausting their FMLA leave. As the Sixth Circuit has stated:

> to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Kleinmark's evidence of similarly situated employees focuses on an administrator's statement that St. Catherine's had extended time off beyond the twelve weeks of FMLA for others in the past and plaintiff's own experience with having had a prior FMLA leave extended. Because defendant had extended Kleinmark's FMLA leave after she gave birth to her children, plaintiff believed it would again do so.

7

Kleinmark does not provide details about the employees allegedly provided FMLA extensions to determine if they reported to the same supervisor as plaintiff, were subject to the same standards governing performance evaluation and discipline, and engaged in conduct similar to the plaintiff's. Without such information, it cannot be determined that others were similarly situated in all material respects to the plaintiff.

To the extent Kleinmark uses her previous situation to satisfy the similarly situated test, she is unable to establish pretext. Her conduct distinguishes the FMLA leave in dispute from her previous FMLA leave. On June 26, 2006, Combs sent Kleinmark home due to an incorrect self-administration of Xanax and contact with patients while under the drug's influence.

Following this incident, Kleinmark continued to display characteristics of mental instability culminating in her request to take FMLA leave to obtain treatment. Kleinmark's previous FMLA leave was due to the birth of her children. Nothing in the record suggests Kleinmark exhibited signs of mental instability or endangered patients before her first FMLA leave.

Kleinmark's comparison of her two instances of FMLA leave fails the *Mitchell* test. Plaintiff is unable to establish pretext and does not present a actionable FMLA retaliation claim.

### 2. State Claims

In addition to her FMLA claim, Kleinmark also asserts seven state claims: wrongful discharge; civil conspiracy; negligence; intentional infliction of emotional distress; abuse of process; defamation; and invasion of privacy.

### A. Wrongful Discharge

Before analyzing the merits of Kleinmark's wrongful discharge claim, I must determine whether she properly brings this claim.

Plaintiff has not submitted evidence of an employment contract; accordingly, she was an employee-at-will. *Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 864 (N.D. Ohio 2003) ("In Ohio, absent an employment contract, an employee is an employee at will and may be terminated at any time for any lawful reason or for no reason at all."). In general, "a discharge without cause does not give rise to an action for damages." *Hollar v. RJ Coffey Cup*, LLC, 505 F. Supp. 2d 439, 454 (N.D. Ohio 2007). The Ohio Supreme Court, however, has recognized an exception to the employment-at-will doctrine where the employer's action violates Ohio public policy. *See Painter v. Graley*, 70 Ohio St. 3d 377, 383-384 (1994) (following *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St. 3d 228, 233-34 (1990)).

Ohio does not, however, recognize a public policy tort claim when the plaintiff bases her cause of action solely on alleged discharge in violation of the FMLA. *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 245-46 (2002) (noting that the FMLA statutory scheme is comprehensive and allowing a tort claim for wrongful discharge in violation of public policy is unnecessary) (plurality opinion); *see also Nocella v. Basement Experts of America*, 499 F. Supp. 2d 935, 945-46 (N.D. Ohio 2007) (recognizing that "[t]o find that a public policy tort could exist where there is an FMLA claim in addition to a state claim that applies the same law and arises out of the same incidents as the FMLA claim would be to render the Ohio Supreme Court's opinion in *Wiles* practically without teeth"); *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311, 317 (2007) (stating that Ohio does not "recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct").

9

Thus, under Ohio law, Kleinmark cannot maintain a public policy wrongful discharge claim where the sole federal claim is a FMLA retaliation claim.

Kleinmark asserts that *Bukta v. J.C. Penney Co.*, 359 F. Supp. 2d 649 (N.D. Ohio 2004), provides supporting authority for her contention. Her argument fails for a number of reasons.

In *Bukta* the plaintiff failed to establish a violation under the FLMA, and her remaining bases for a public policy tort were under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and O.R.C. § 4112.02. The court recognized an Ohio public policy claim based on alleged violations of the ADA:

> Unlike its decision regarding the FMLA, the Ohio Supreme Court has not yet held that the ADA and O.R.C. § 4112.02 provide remedies broad enough to fully compensate an aggrieved employee for an employer's violation of those statutes. Therefore, even though the ADA and O.R.C. § 4112.02 provide remedies for damages, injunctive and other appropriate relief, the Court shall recognize a common law action for wrongful discharge in violation of public policy under Ohio law based solely on violations of the ADA and O.R.C. § 4112.02.

*Bukta*, *supra*, 359 F. Supp. 2d at 674.

In citing *Bukta*, plaintiff appears to argue Ohio courts have extended the availability of the public policy wrongful discharge claim, and that such a claim is actionable in this case. This argument is not persuasive. *Bukta* indicates that our District has recognized a claim for wrongful discharge based on the public policy expressed in the ADA and O.R.C. § 4112. This is because the Ohio Supreme Court has not held that the ADA or the O.R.C. provide sufficient relief to an aggrieved employee. However, the *Bukta* court explicitly acknowledges that the Ohio Supreme Court has held that the FMLA provides remedies broad enough to compensate aggrieved employees. This case does not further Kleinmark's argument.

Further, if the use of *Bukta* is an attempt by Kleinmark to lay the foundation for an O.R.C. § 4112.02 claim, it fails in that regard as well. Assuming Kleinmark had stated a cause of action under O.R.C. § 4112.02 in the complaint, which she did not, *Bukta* has been overruled with respect to O.R.C. § 4112.02. *Carrasco v. NOAMTC Inc.,* 124 Fed. Appx. 297 (6th Cir. 2004) (unpublished disposition), acknowledges there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. *Id.* at 304 (citing *Wiles*, *supra*, 96 Ohio St. 3d at 244). As the Sixth Circuit has interpreted *Wiles* to cover all common-law tort claims for wrongful discharge based on violations of statutes providing a remedy for their violation, Kleinmark is unable to prevail on this claim.

### B. Civil Conspiracy

Kleinmark's second state law claim alleges civil conspiracy. "The Supreme Court of Ohio defines civil conspiracy as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St. 3d 121, 126 (1987)). To establish a claim of civil conspiracy, plaintiff must allege: 1) a malicious combination; 2) of two or more persons; 3) injury to person or property; and 4) existence of an unlawful act independent from the actual conspiracy. *Id.* It has long been established that a plaintiff must prove an underlying unlawful act to prevail in civil conspiracy claim. *Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App. 3d 371, 380 (2000); *see also Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998).

Kleinmark bases her claim on the report, detailing plaintiff's conduct on June 26, 2006, that Combs submitted to the Ohio Board of Nursing. Plaintiff argues that she was accused of abusing

11

Xanax and cocaine, and she refused to sign the report because it incorrectly represented the amount of Xanax she had taken. She also asserts that Combs had conversations with "the Defendant" while preparing the report and had stated that plaintiff would gossip about taking illegal drugs.

Kleinmark provides no evidence to indicate that any other members of the St. Catherine's staff were involved in preparing the report or that the report was motivated by anything beyond Combs' own sense of obligation to report such incidents. Moreover, Combs' providing notice to the Nursing Board about Kleinmarks actions did not constitute an unlawful act. Considering the strictness with which I must view any civil conspiracy claim, I find plaintiff's conclusory allegations insufficient. Plaintiff's complaint does not set forth facts sufficient to state a claim of conspiracy.

### C. Negligence

Plaintiff's next claim is negligence based on the theory that St. Catherine's had a duty to protect her job, and that it negligently failed to do so. To recover on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty, the defendant breached that duty, and breach of the duty proximately caused the plaintiffs injury. *Chambers v. St. Mary's School*, 82 Ohio St. 3d 563, 565 (1998).

"The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (1989). As mentioned previously, an employer can terminate an employee-at-will at any time without cause. An employer entitled to discharge an employee under the employment-at-will doctrine has no duty to protect that employee's job.

Nothing indicates that St. Catherine's had a duty to protect Kleinmark's job. She proffers no evidence of an employment contract between Kleinmark and St. Catherine's providing otherwise. Plaintiff was an employee-at-will and could be terminated at any time with or without cause.

### D. Intentional Infliction of Emotional Distress

Kleinmark's next claim alleges intentional infliction of emotional distress. Under Ohio law, to support a claim for intentional infliction of emotional distress a plaintiff must show:

> 1) the defendant intended to cause emotional distress or knew or should have known that the actions taken would result in emotional distress to the plaintiff; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's actions proximately caused the plaintiff's psychic injury; and 4) the plaintiff's mental anguish is serious and of a nature that no reasonable man could be expected to endure it.

*Boyd v. Bressler*, 18 Fed. Appx. 360, 367 (6th Cir. 2001) (internal quotation marks and citation omitted). Kleinmark's argument for intentional infliction of emotional distress focuses on the second element.

The Supreme Court of Ohio has relied on the definition of extreme and outrageous conduct found in § 46(1) of the Restatement (Second) of Torts (1965):

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Dodge v. U.S.,* 162 F. Supp. 2d 873, 887 (S.D. Ohio 2001).

There is no genuine issue regarding this claim. Kleinmark's assertions that defendant psychologically harmed her over her children's deaths, "tri[ed] to reprimand for things she had no control over," and intruded into her "solitude and private affairs" are not well taken. Nothing about

13

St. Catherine's conduct in instructing Kleinmark not to discuss the details of her personal life with patients and staff fits the Supreme Court of Ohio's standard for extreme and outrageous conduct. St. Catherine's had a responsibility to ensure that the residents of their facility were not disturbed by the tragic details of Kleinmark's personal life. Acting to ensure appropriate and non-intrusive care to patients is by no means "outrageous."

### E. Abuse of Process

To establish a claim for abuse of process a plaintiff must show that: 1) a legal proceeding has been set in motion in proper form and with probable cause; 2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and 3) direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 298 (1994).

The thrust of Kleinmark's claim is that Combs filed a report with the Ohio Board of Nursing following the 2006 incidents. Kleinmark claims that the report included untrue allegations of prescription drug abuse, illegal drug use, and heavy drinking. Plaintiff also claims Combs' mischaracterization of her conduct resulted in a six-day suspension and an investigation by the Board of Nursing.

Kleinmark cannot prove the report's contents were false because, in accordance with O.R.C. § 4723, the report is shielded from disclosure. Without this proof, Kleinmark cannot establish that Combs made any false statements, let alone present evidence to support her inference that she made any such statements to accomplish an ulterior, improper purpose.

Moreover, St. Catherine's cannot be liable in this case because Combs was not culpable. Section 4723.341(B)(1) of the Revised Code immunizes individuals reporting misconduct to the

Ohio Board of Nursing from liability: "[i]n the absence of fraud or bad faith, no person reporting to the board of nursing" shall be subject to "[l]iability in damages in a civil action for injury, death, or loss to person or property." *See also* O.R.C. § 4723. 28(H) (providing "[i]n the absence of bad faith, any person who reports such information . . . shall not be liable for civil damages").

Kleinmark admitted to professional misconduct in the consent decree she signed on January 16, 2007. Because she signed the consent decree, she cannot properly claim that St. Catherine's acted in bad faith with respect to their proffered reasons for filing the report with the Ohio Board of Nursing. Given that Combs cannot be held liable, St. Catherine's has no liability for the actions of its subordinate.

### F. Defamation

In Ohio, "[d]efamation is the unprivileged publication of a false and defamatory matter about another." *McCartney v. Oblates of St. Francis de Sales*, 80 Ohio App. 3d 345, 353 (1992). More precisely, it is a statement which "tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace or affects him adversely in his trade or business." *Id.*

Employers have a qualified privilege when the communication is made in good faith on a matter of common interest between an employer and an employee. *Hahn v. Kotten*, 43 Ohio St. 2d 237, 243 (1975). "It is well established in Ohio that communications between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege." *Gray v. Allison Division, General Motors Corp.*, 52 Ohio App. 2d 348, 351 (1977). When a defendant possesses a qualified privilege, that privilege is defeated only by a clear and convincing

15

showing that the communication was made with actual malice. *Jacobs v. Frank*, 60 Ohio St. 3d 111, 116 (1991).

Kleinmark bases her defamation claim on 1) Combs's report to the Ohio Board of Nursing and 2) the memo written to St. Catherine's employees after plaintiff's termination instructing employees that she was not to call or enter the building. As stated previously, plaintiff is unable to show that the report contained untrue, false or defamatory statements. Plaintiff cannot disprove the truth of the matter communicated to the Nursing Board.

The memo is subject to qualified privilege. The communication occurred after plaintiff's termination and was directed only to others employed at St. Catherine's. Kleinmark offers no clear and convincing evidence that the memo was made with actual malice. Given the circumstances surrounding her termination it was not unreasonable for St. Catherine's to ensure that she not enter their facility–the letter was motivated by a concern for the patients and staff of St. Catherine's, not malice toward Kleinmark. Plaintiff therefore fails to prove her defamation claim with respect to Combs' memo.

### G. Invasion of Privacy

Kleinmark's final claim is for invasion of privacy. Kleinmark bases her claim on the fact that St. Catherine's asked her to stop discussing the details of her personal life with other staff and patients, as well as other unconfirmed statements that she believes were made outside of her presence. To prove her claim of invasion of privacy she must prove St Catherine's:

> intruded into her private activities in such a manner as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities. The intrusion must be of such a character as would shock the ordinary person to the point of emotional distress. This standard is similar to the one that is applied to intentional infliction of emotional distress claims.

16

*Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 905 (S.D. Ohio 1999) (internal quotation marks and citations omitted).

Kleinmark's claim that St. Catherine's intruded on her privacy by asking her not to discuss her personal life at work is logically flawed. Plaintiff was not asked to reveal information about herself to others. To the contrary, she was asked to preserve her privacy while she was at work. St. Catherine's wanted to protect, rather than intrude on, her privacy, and it was not a request that would "cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id*. Further, the alleged invasive intrusions, such as "verbal reprimands for talking with other staff members" and intrusions in plaintiff's "seclusion and solitude," do not rise to the level of invasion of privacy. Plaintiff's final claim fails.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT CHS-Lake Erie, Inc.'s motion for summary judgment [Doc. 26] be, and the same is hereby granted.

So ordered.

                                                             s/James G. Carr
                                                             James G. Carr
                                                             Chief Judge